UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

MORDEAN L.[1],

                                    Plaintiff,       19-CV-277-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
───────────────────────────────

**INTRODUCTION**

On April 27, 2015, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits alleging disability beginning on March 1, 2013. Tr.[2] at 133-34, 236, 243. After the applications were initially denied, Plaintiff timely requested a hearing. Tr. 172. On November 17, 2017, she appeared with her attorney, Nicolas Di Virgilio, Esq., and testified before Administrative Law Judge Michael Carr ("the ALJ"). Tr. 93-132. A Vocational Expert ("VE"), Corrine Porter, also testified at the hearing. Tr. 123-31. The ALJ issued an unfavorable decision on May 25, 2018. Tr. 13-27. Plaintiff then requested review by the Appeals Council, which the Council denied on November 19, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Subsequently, Plaintiff brought this action pursuant to Titles II and XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her applications for DIB and SSI.[3] ECF No. 1. Presently before the Court are the parties' competing motions for

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in social security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

judgment on the pleadings. ECF Nos. 9, 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b)[4]. If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cited the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.    The ALJ's Decision**

First, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016. Tr. 16. At Step One of the sequential analysis, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2013. *Id.* At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: mild bilateral knee joint arthritis; umbilical hernia; diabetes; hypertension; obesity; major depressive disorder with psychotic features; and alcohol and marijuana abuse in remission. *Id.* At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 17. The ALJ then determined that Plaintiff retained the RFC to perform a full range of medium work, except that she could perform simple, routine tasks, and make simple work-related decisions in an environment that provides for minimal changes; could tolerate occasional contact with supervisors and coworkers, but not with the general public; and could not perform tandem work. Tr. 19. At Step Four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 26. The ALJ then proceeded to Step Five, where he determined that there were jobs in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 28-29. Specifically, the ALJ found that Plaintiff could work as a night cleaner, wall cleaner, and sweeper/cleaner. Tr. 27.

**II.   Analysis**

Plaintiff essentially argues that the ALJ's RFC was not supported by substantial evidence because the ALJ erred in weighing the four medical opinions contained in the record by providing the most weight to the stale and vague opinion of the non-treating and non-examining physician,

4

and by cherry-picking the evidence that supported a finding of not disabled. ECF No. 9 at 10-17. The Court disagrees.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). While reviewing the denial of application for benefits, the court must keep "in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted).

When assessing Plaintiff's mental[5] limitations, the ALJ considered four opinions contained in the record – two of which were issued on behalf of the Commissioner, and two submitted by Plaintiff's treating medical sources: her mental health social worker and a nurse practitioner. Tr. 24-25. Plaintiff's argument stems from the ALJ affording great weight to the opinion of the non-examining and non-treating physician Dr. Bhutwala, which, she argues, was stale and vague. ECF No. 9-1 at 10-14. The Court does not find Plaintiff's argument persuasive because an ALJ's RFC determination is not fatally flawed merely because it was formulated based on an opinion of a non-examining evaluator or absent a medical opinion. *Monroe v. Comm'r of Soc. Sec*., 676 F. App'x 5, 8 (2d Cir. 2017). In fact, it has been well-recognized that the ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants as they are deemed to be qualified as experts in the field of social security disability. 20 C.F.R. §404.1513a(b)(1); *see also, e.g.*, *Trepanier v. Comm'r of Soc Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (summary order) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x

---

[5] Because Plaintiff does not raise concerns about the ALJ's determination of her physical RFC, the Court is limited to resolving Plaintiff's arguments related to her mental functioning.

401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence." (internal citation omitted)). So long as the opinion evidence of a medical expert is consistent with the rest of the evidence in the medical record, the ALJ is allowed to rely heavily on it when assessing claimant's RFC. *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.").

Here, the Court finds that the ALJ did not err in affording great weight to the opinion of Dr. Bhutwala and in relying on it to formulate Plaintiff's RFC because the opinion was largely consistent with the record. Firstly, Dr. Bhutwala relied on Plaintiff's records from Horizon Mental Health Services, and the examination report of a consultative evaluator Dr. Ippolito, when he opined that Plaintiff had no limitations in the ability to follow simple instructions; maintain a schedule; sustain an ordinary routine without supervision; work in coordination with or proximity to others; make simple work-related decisions; and accept instruction from supervisors. Tr. 143, 151, 406. Recognizing Plaintiff's limitations handling stress, Dr. Bhutwala limited Plaintiff to simple low contact work. Tr. 406. His opinion was consistent with Dr. Ippolito's opinion, which concluded that Plaintiff had no limitations in her ability to follow and understand simple instructions; perform simple tasks independently; maintain attention, concentration, and a regular schedule; perform complex tasks independently; and relate adequately with others. Tr. 404. Dr. Ippolito further concluded that Plaintiff had only mild limitations in her ability to learn new tasks, and moderate limitations in the ability to make appropriate decisions. *Id*. Even though the ALJ afforded only partial weight to Dr. Ippolito's opinion because of the ambiguous finding that Plaintiff's ability to appropriately deal with stress was moderate to marked, the rest of Dr. Ippolito's findings were consistent with the record and with Dr. Bhutwala's opinion. Tr. 24.

Plaintiff argues that the ALJ should not have relied on Dr. Bhutwala's September 2015 opinion because it was stale and issued before the bulk of Plaintiff's mental health treatment. ECF No. 9-1 at 10-11.  Plaintiff's argument is unavailing.  While the Court recognizes that the age of a medical opinion might render it stale, *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition."), the record here does not support Plaintiff's conclusions that her mental health condition had significantly deteriorated after Dr. Bhutwala issued his opinion. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018).  Instead, the record demonstrates that Plaintiff's depressive disorder has not only generally remained the same since September 2015, but has actually improved with consistent treatment and proper medications.  Specifically, even though she complained about feeling depressed, isolated, and having paranoia on some occasions, Plaintiff, nonetheless, exhibited the overall improvement of these symptoms during the course of her conservative treatment when her treatment provides noted lack of paranoia, improved euthymic mood, cooperative behavior, normal speech, good eye contact, logical thought process, and fair judgment. Tr. 369-70, 403, 430, 449-54.  Treatment records of Plaintiff's social worker and nurse practitioner demonstrate that Plaintiff often commented on how she was getting better, feeling "amazing," and was able to use her coping skills to focus on school, work, and "keeping herself well."  Tr. 449-50. Notably, the exacerbation of Plaintiff's depression, hallucinations, and mood fluctuation was associated with her unilateral discontinuance of the prescribed medication.  Tr. 515-16.  It should also be noted that even though Plaintiff alleged March 1, 2013 as the onset of her disability, she actually commenced her mental health treatment two years later in May 2015 in response to the

7

order of West Seneca Mental Health Treatment Court issued following Plaintiff's arrest. Tr. 371, 413, 461.

Importantly, even though the ALJ afforded great weight to Dr. Bhutwala's opinion, he did not follow all of Dr. Bhutwala's findings blindly when he formed Plaintiff's RFC, and, instead, formulated it based on the totality of the evidence contained in the record. *See* 20 C.F.R. § 404.1527(d)(2) (although the ALJ can consider opinions from medical sources to determine claimant's RFC, the final responsibility for deciding a claimant's RFC is, nonetheless, reserved to the Commissioner). For instance, even though Dr. Bhutwala opined that Plaintiff did not have limitations in accepting instructions, responding to criticism from supervisors, interacting appropriately with the general public, and performing low contact work, the ALJ, upon his review of the entire record, limited Plaintiff to only occasional contact with supervisors and coworkers, and no contact with the general public. Tr. 19, 143, 406. Because it is "within the province of the ALJ to resolve" conflicting findings and determine the scope of Plaintiff's RFC, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), the ALJ properly deviated from Dr. Bhutwala's recommendations when he arrived at Plaintiff's RFC based on his review of the other evidence in the record. *Id*. For the same reason, the ALJ reasonably provided little weight to the opinions of Plaintiff's social worker and nurse practitioner as their restrictive limitations were inconsistent with their own treatment records evidencing the improvement of Plaintiff's symptoms with consistent treatment described above, Plaintiff's activities of daily living, and the record as a whole. Because consistency is a factor in deciding the weight accorded to any medical opinion, *see Monroe v. Colvin*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (holding an ALJ had properly discounted a medical source opinion based on, among other things, the inconsistency of that physician's opinion with his treatment notes), the ALJ properly discounted their opinions.

Notably, Plaintiff's daily activities, particularly her attendance of college during pendency of her disability applications, the importance of which she is trying to minimize in her argument, were substantial factors that weigh heavily in support of the RFC.  The record demonstrates that throughout the relevant period, Plaintiff earned her associate's degree and was enrolled at the University at Buffalo where she was obtaining her bachelor's degree in health and human services. Tr. 453.  Even though Plaintiff reported being stressed and anxious because of difficulties with her studies, she, nonetheless, was able to achieve good grades to advance to the last semester of school when she only required seven credits to graduate.  While at school, Plaintiff was able to obtain an internship at Erie County Medical Center (ECMC), and work with the New York State Office of Vocational and Educations Services (VESID) and New York State Adult Career and Continuing Services Vocational Rehabilitation (ACCER-VR) to assist her with financial aid to complete the remaining college credits and with employment search.  Tr. 453, 454.  Plaintiff's attendance of college, as well as her part-time employment during pendency of this action are not only commendable activities, but also were significant factors for the ALJ to consider when he weighed the opinion evidence of the record and Plaintiff's own allegations of the severity of her symptoms. *See Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) ("An ALJ may . . . properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled.").  Because evidence of the claimant's ability to earn college degree "may provide 'good reason' to afford less weight to the opinion of a treating doctor indicating that the plaintiff is unable to work[,]" *id.*, the ALJ properly discounted the findings of Plaintiff's treating social worker and nurse practitioner about Plaintiff's disabling limitations in her ability to understand instructions, maintain attention, sustain an ordinary routine without supervision, complete a workday, and interact with others.  Tr. 25.

Instead, he relied on the opinions of Drs. Ippolito and Bhutwala, and considered Plaintiff's ability to attend college, work part-time, as well as her ability to take public transportation, routinely interact with friends, college professors, and staff, as well as attend church and narcotics anonymous meetings, to determine that Plaintiff was capable to perform simple, routine tasks, and make simple work-related decisions while occasionally interacting with supervisor and coworkers, and not with the general public. *See, e.g.*, *Silva*, 2019 WL 2569595 (plaintiff, who attended college and worked part-time during pendency of the action could perform simple, repetitive tasks, and mainline a regular schedule without interaction with the public); *Cerio v. Colvin*, No. 5:14-CV-875 (DJS), 2015 WL 6454751, at *9 (N.D.N.Y. Oct. 26, 2015) (the ALJ properly credited the opinion of the consultative examiner that plaintiff could perform simple and unskilled tasks when plaintiff was engaged in various activities, including college attendance); *Omori v. Colvin*, No. 5:13-CV-1266 (GLS), 2015 WL 58387, at *3 (N.D.N.Y. Jan. 5, 2015) (plaintiff was capable of maintaining attention and concentration for simple unskilled work when he was able to graduate high school and complete a two-year college program with accommodation for learning disability); *Goodale v. Astrue*, 32 F. Supp. 3d 345, 361 (N.D.N.Y. 2012) (plaintiff's complaints of disabling daily fatigue was undermined by his obtaining of two associate's degrees after the alleged onset date, completing a part-time liberal arts program and a full-time criminal justice program).

Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, she has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have

to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  Here, because the Court concluded that the ALJ properly assessed the medical evidence regarding Plaintiff's functional limitations, it finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is GRANTED. The Commissioner's decision is hereby AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: November 24, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court